# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| UMAWA OKE IMO, | § | |
|     Movant, | § | CRIM. NO. 4:09-CR-426-1 |
| | § | |
|     v. | § | CIVIL NO. 4:15-CV-1827 |
| | § | |
| UNITED STATES OF AMERICA, | § | |
|     Respondent. | § | |

## UNITED STATES' MEMORANDUM IN RESPONSE TO § 2255 MOTION

The United States submits this memorandum in response to Umawa Oke Imo's § 2255 motion and his motion to supplement the § 2255 motion (DE 751, CV DE 8)[1] and respectfully requests that this Court:

(1)    Determine whether Imo currently qualifies for appointed counsel, and if so, appoint counsel to represent him for the purposes of the evidentiary hearing described below;

(2)    After appointing counsel (or finding Imo ineligible for appointed counsel), conduct a limited evidentiary hearing to determine whether Imo has met his burden of showing prejudice with respect to his claim that his appellate counsel rendered ineffective assistance by failing to appeal this Court's imposition of a two-offense level increase, pursuant to U.S.S.G. § 3C1.1, based on Imo's failure to provide financial information to the Probation Department;

---

[1] Citations in the format "DE____" refer to numbered documents in the docket of Imo's criminal case, 4:09-CR-426. Citations to "CV DE ___" refer to numbered documents in the docket of Imo's civil case opened in connection with his § 2255 motion, 4:15-CV-1827. Citations in the format "PSR ¶___´ refer to the presentence report prepared on September 16, 2011, and revised on October 17, 2011.

(3)    Deny the remaining claims in Imo's § 2255 motion because the record conclusively shows that Imo is not entitled to relief, *United States* v. *Santora*, 711 F.2d 41 (5th Cir. 1983); and

(4)    Deny Imo leave to supplement his § 2255 motion with the claims set forth in his motion to supplement (CV DE 8) because those claims are untimely and do not "relate back" to the claims in Imo's initial § 2255 motion. *See United States* v. *Gonzalez*, 592 F.3d 675, 680 (5th Cir. 2009).

## I.    Relevant Facts[2]

### a. A jury convicts Imo of defrauding Medicare and Medicaid of tens of millions of dollars.

Following a three-week trial, a jury found Imo guilty of forty-eight separate counts related to a scheme to commit healthcare fraud. DE 434. Imo's convictions arose from his participation in a healthcare fraud scheme involving City Nursing Services of Texas ("CNS"), an alleged physical therapy clinic in Houston, Texas. *United States* v. *Imo*, 739 F.3d 226, 230 (5th Cir. 2014). Imo, along with coconspirator Christina Joy Clardy, submitted an application to Medicare on behalf of CNS. *Id.* Imo also signed the Medicare participating physician or supplier agreement, which ensured that payments for any filed claims would go to CNS rather than the patient. *Id.* Medicare approved CNS's application and provided it with a billing number; Imo also submitted an application to Medicaid which was likewise approved. *Id.* Despite the fact that it was purportedly a physical therapy

---

[2] This factual summary draws largely form the Fifth Circuit's opinion affirming Imo's conviction and sentence and those of his codefendants. *United States* v. *Imo*, 739 F.3d 226, 230 (5th Cir. 2014).

clinic, "CNS was never registered to provide physical therapy services and did not have any licensed physical therapists." *Id.*

Imo brought patients, all of whom were required to have Medicare or Medicaid, to CNS to be treated by a physical therapy aide. *Id.* at 231. As CNS expanded, additional employees were hired to recruit patients. *Id.* CNS paid the employees for each patient they brought in and also paid the patients themselves whenever they visited the clinic. *Id.* Initially, Imo himself was responsible for paying the patients and the people who referred them. *Id.* When he was unable to make the payments, he would assign another employee to do so. *Id.*

During a patient's first visit to CNS, an employee would collect basic medical information. *Id.* "Before patients received treatment, CNS had them sign treatment forms" and often had patients sign multiple blank treatment forms during a single clinic visit. *Id.* Imo and other CNS employees would then fill in these blank treatment forms as if the patient received certain services, regardless of whether the patient actually received any treatment. *Id.* "As more patients began to come to CNS, patients would either not undergo any physical therapy or receive treatment from employees not licensed to provide such services." *Id.*

Initially, Imo handled the billing for CNS; however, other employees became responsible for billing later in the scheme. *Id.* One such employee instructed other employees to bill for certain services regardless of what therapy

3

the patient actually received. *Id.* Among other evidence of the fraud, "CNS billed Medicare and Medicaid for deceased patients." *Id.* "At one point, CNS billed Medicare for 382 patients in one day" and also submitted billing claiming that Clardy "supervised more than 380 patients during the course of a single day" during which "each patient purportedly received three hours of physical therapy." *Id.* at 231-32.

Imo opened accounts in the name of CNS at multiple banks and signed electronic funds transfer agreements with Medicare and Medicaid to allow direct deposit of payments from those entities for the claims submitted by CNS during the course of the scheme. PSR ¶ 17. From January 2007 through June 2009, Imo, through CNS, submitted $45,039,923 in fraudulent Medicare claims and $16,957,872 in fraudulent Medicaid claims. PSR ¶ 27. Of that amount, Medicare and Medicaid actually paid $30,216,592 to the CNS accounts that Imo opened and controlled. *Id.*

### b. This Court sentences Imo to 327 months' imprisonment and the Fifth Circuit affirms his conviction and sentence.

The Probation Department prepared a presentence investigation report calculating Imo's total offense level to be 37, as set forth in the table below.

| PSR ¶ | U.S.S.G. Section (2010 Edition) | Basis | Offense Level |
|-------|-------------------------------|-------|---------------|
| PSR ¶ 62 | 2B1.1(a)(1) 2X1.1 | Base offense level | 7 |
| PSR ¶ 63 | 2B1.1(b)(1)(L) | Imo was responsible for a loss of more than $20,000,000, but not more than | +22 |

| | | $50,000,000 | |
|---|---|---|---|
| PSR ¶ 64 | 2B1.1(b)(2)(A)(ii) | The offense was committed through mass marketing, namely the use of recruiters and marketers to induce a large number of patients to go to CNS | +2 |
| PSR ¶ 66 | 3B1.1(a) | Imo was a leader/organizer of the offense, which involved five or more participants or was otherwise extensive | +4 |
| PSR ¶ 67 | 3B1.3 | Imo abused a position of trust which significantly facilitated the commission or concealment of the offense | +2 |
| | | **Total Offense Level** | **37** |

Imo objected to the 22-level increase based on the loss amount and, at sentencing, Imo's counsel argued that it was error to determine Imo's loss amount by finding the intended loss to be the amount that CNS billed Medicare, namely "approximately 45 or $47 million." DE 567 at 5-8. The Government responded that, even if Imo were correct that the amount billed to Medicare were not the proper measure of intended loss, it would not affect Imo's guidelines range because he caused an actual loss of more than $20 million, namely the "$30 million that was paid directly to Mr. Imo" from Medicare and Medicaid for the fraudulent claims. *Id.* at 7. This Court agreed with the Government and overruled Imo's objection. *Id.* at 7-8.

Imo also objected to the 2-level increase based on the use of mass marketing; at sentencing his counsel argued that "the record [did] not support a conclusion that Mr. Imo jointly undertook the mass marketing sufficiently to justify the application of the enhancement." *Id.* at 8. The Government responded

that "trial evidence did support that Mr. Imo was personally involved in the mass marketing" because, among other things, "[h]e was responsible for handing out the cash payments to recruiters and [Medicare/Medicaid] beneficiaries." *Id.* at 9. Following argument, this Court overruled Imo's objection. *Id.*

The Government also argued that Imo was subject to a 2-level increase pursuant to U.S.S.G. § 3C1.1 because he had "failed to provide probation and the Court with information about what happened to over $30 million that he received" in connection with the offense. *Id.* at 10. The Government asserted that Imo's "failure to provide this [financial information] is obstructing justice," thus warranting the 2-level increase under U.S.S.G. § 3C1.1. *Id.* at 10-11. Imo's counsel responded that he had "advised and caused Mr. Imo not to file a financial statement" with the Probation Department because he was concerned that an inaccuracy or willful misstatement might lead to an "upward enhancement" or, potentially, a perjury prosecution. *Id.* at 11-14. After hearing from the parties, this Court stated, "I don't think that Mr. Imo is playing straight with us about his finances, in just not telling us anything about them." *Id.* at 15. This Court, accordingly, imposed the 2-level obstruction of justice increase pursuant to U.S.S.G. § 3C1.1. *Id.*

After applying the 2-level obstruction of justice increase, this Court found Imo's offense level to be 39, yielding an advisory guidelines range of 262-327

months' imprisonment. *Id.* at 16. After argument from the parties, this Court imposed a sentence at the top of that range, 327 months. *Id.*

### c. The Fifth Circuit affirms the convictions and sentences of Imo and his codefendants.

Imo and two of his codefendants, Christina Joy Clardy and Kenneth Ibezim Anokam,[3] appealed their convictions and sentences. *Imo*, 739 F.3d at 230. Imo raised a single argument on appeal, challenging this Court's denial of defendants' request to give a limiting instruction during trial and the final jury charge. *Id.* Clardy and Anokam also challenged this Court's application of a sentencing enhancement based on their intended loss (exceeding $20,000,000), and Anokam argued that this Court erred by imposing a sentencing enhancement for mass marketing.[4] *Id.*

The Fifth Circuit rejected each of the defendants' arguments, holding that this Court did not err by finding Clardy and Anokam responsible for the intended loss amount reflected in the amounts billed to Medicare and Medicaid during the

---

[3] "Clardy, an anesthesiologist, worked at CNS," where her "duties included supervising the physical therapy services provided and maintaining the medical records associated with those." *Imo*, 739 F.3d at 230-31. "Anokam was in charge of [CNS] when Imo was not present, assisted in falsifying data on the forms submitted to Medicare and Medicaid, handled problems that arose, and paid people who came to the clinic complaining that CNS had overcharged them." *Id.* at 231.

[4] Clardy also challenged the sufficiency of the evidence supporting her convictions and raised three evidentiary challenges. *Imo*, 739 F.3d at 230.

time they participated in the conspiracy, which exceeded $20,000,000 for each defendant. *Id.*

Noting that "the amount billed to Medicare and Medicaid is prima facie evidence of the amount of loss the defendant intended to cause," the Court held that sufficient additional evidence supported the conclusion that Clardy and Anokam each intended to cause a loss of more than $20,000,000. *Id.* at 240-41 (internal quotation omitted). As to Clardy, that evidence included the fact that "Clardy signed the Medicare application for CNS with Imo and was hired by CNS to oversee and conduct physical therapy services there" and that she "worked for CNS after sending CNS a letter demanding that it stop billing Medicare under her number." *Id.* at 241. As to Anokam, the evidence included testimony that he "had a managerial role in CNS and participated with the billing" and that he created false patient files, hired employees, paid patients and recruiters, and was one of only a few employees at CNS who had access to the mail. *Id.* at 241.

The Fifth Circuit also rejected Anokam's challenge to the two-offense-level increase for the use of mass marketing in the offense, noting that, as Anokam conceded, his argument was foreclosed by *United States* v. *Isiwele*, 635 F.3d 196, 205 (5th Cir. 2011), in which the Fifth Circuit held that a defendant was eligible for the mass marketing enhancement on the basis of a coconspirator's face-to-face

recruitment of Medicare/Medicaid beneficiaries. *Imo*, 739 F.3d at 241 n. 12 (citing *Isiwele*, 635 F.3d 196).

Accordingly, in an opinion issued January 7, 2014, the Fifth Circuit affirmed the convictions and sentences of Imo, Clardy, and Anokam. *Imo*, 739 F.3d at 241. Clardy filed a petition for rehearing in the Fifth Circuit, which the court denied on February 4, 2014.

### d. This Court reduces Imo's sentence pursuant to Federal Rule of Criminal Procedure 35.

On November 10, 2015, this Court reduced Imo's sentence, based on the Government's motion pursuant to Federal Rule of Criminal Procedure 35(b), to a term of 218 months' imprisonment. DE 783.

## II. Imo's § 2255 motion

Imo filed a § 2255 motion (DE 751) and a memorandum in support (DE 751-1) in which he asserted that he had received constitutionally ineffective assistance of counsel in the following ways:

- Appellate counsel failed to appeal this Court's loss calculation; DE 751 at 4

- Appellate counsel failed to appeal this Court's imposition of a two-offense-level increase based on the use of "mass marketing" in the offense; *Id.* at 5

- Trial counsel caused Imo not to provide requested financial information to the Probation Department, leading this Court to impose a two-offense-level increase for obstruction of justice; *Id.* at 6 and

- Appellate counsel failed to challenge the obstruction of justice enhancement on appeal. *Id.*

Imo also later filed a motion to supplement (DE CV 8), in which he sought to supplement his § 2255 to add two other claims, alleging that he had also received ineffective assistance of counsel in the following ways:

- Because Imo's original trial counsel was unable to represent him at trial because of a medical issue, one of counsel's associates served as lead trial counsel, but failed to provide effective representation because he lacked sufficient experience and expertise; DE-CV 8 at 3 and

- Appellate counsel failed to pursue on appeal the change in Imo's lead trial counsel. *Id.*

As set forth below, § 2255's one-year statute of limitations bars the claims in Imo's motion to supplement. With one exception, the record conclusively shows that Imo is not entitled to relief on each of the claims in his initial § 2255 motion. *Santora*, 711 F.2d at 41. The exception is Imo's claim that appellate counsel was ineffective for failing to appeal the obstruction of justice increase, for which an evidentiary hearing is appropriate.

### a. The claims in Imo's motion to supplement his § 2255 motion are barred by § 2255's one-year statute of limitations.

Section 2255 establishes a one-year limitations period during which a motion seeking relief must be filed. 28 U.S.C. § 2255(f). "[F]or federal criminal defendants who do not file a petition for certiorari with [the Supreme Court] on direct review, § 2255's one-year limitation period starts to run when the time for

seeking such review expires." *Clay* v. *United States*, 537 U.S. 522, 532 (2003); 28 U.S.C. § 2255(f)(1). Typically, the time for filing a petition for certiorari expires 90 days after a defendant's judgment is affirmed in the Court of Appeals. *See United States* v. *Redd*, 562 F.3d 309, 311 n. 2 (5th Cir. 2009). "[I]f a petition for rehearing is timely filed in the lower court by any party," however, "the time to file the petition for a writ of certiorari for all parties (whether or not they requested rehearing or joined in the petition for rehearing) runs from the date of the denial of rehearing." U.S. Sup. Ct. R. 13.3.

The final date on which Imo could have filed a petition for certiorari was May 5, 2014 (90 days after the Fifth Circuit denied Clardy's petition for rehearing). Accordingly, the last date upon which Imo could timely file a § 2255 motion was one year later, May 5, 2015. Imo's counsel filed his initial § 2255 motion on May 4, 2015, within the one-year limitations period.[5] DE 751. Imo's motion to supplement, however, was not filed until April 27, 2016, almost a year after § 2255's statute of limitations had expired. (CV DE 8.

When a motion to amend or supplement a § 2255 motion is filed outside of the one-year limitations period, the claims in the motion to supplement are only considered timely if they "relate back" to the claims in the initial, timely-filed

---

[5] After its initial filing in May 2015, Imo withdrew his motion in September 2015 (DE 766, 769) and then reinstated it in January 2016 (DE 789, 790). The United States does not argue that Imo's withdrawal and refiling of his motion rendered it untimely.

§ 2255 motion. *United States* v. *Gonzalez*, 592 F.3d 675, 679 (5th Cir. 2009). "New claims of ineffective assistance of counsel do not automatically relate back to prior ineffective assistance of counsel claims simply because they violate the same constitutional provision." *Id.* at 680. Rather, if a defendant's "new claim asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth," then the "proposed amendment does not relate back to his original pleading and is time-barred." *Id.*

The Fifth Circuit rejected a defendant's relation-back argument where his initial § 2255 motion asserted ineffective assistance of counsel at sentencing and in coercing the defendant to go to trial. *Id.* The proposed amendment asserted ineffective assistance based on counsel's failure to file an appeal. *Id.* The Court explained that "[f]ailing to file an appeal is a separate occurrence in both time and type from conduct that occurs at the sentencing phase and before trial." *Id.* (internal quotation omitted). The Court concluded, "[b]ecause the proposed amendment raises a new claim and therefore does not relate back to the original § 2255 motion, it is time-barred." *Id.* Nothing warrants a different result here.

In his initial § 2255, Imo asserted only sentencing-related ineffective assistance of counsel claims, arguing that his appellate lawyer had improperly filed to appeal the imposition of three increases in his offense level and that his trial counsel had rendered ineffective assistance by advising him not to provide a

financial statement to the Probation Department. DE 751. In his motion to supplement, Imo broadly asserts that trial counsel rendered ineffective assistance because he lacked the requisite "experience and expertise" to act "as Lead Trial Counsel" after counsel Imo had initially retained "suffered an acute health issue" and "was unable to recover quickly enough to serve as Mr. Imo's Lead Counsel." CV DE 8 at 2-3. The second claim in Imo's motion to supplement is that "Appellate Counsel failed to raise this issue on direct appeal." *Id.*

As in *Gonzalez*, the types of ineffective assistance alleged in Imo's initial motion and in his motion to supplement differ in both time and type. Imo's initial claims all relate to counsel's purported ineffective assistance related to this Court's Guidelines calculations. Those claims focus narrowly on sentencing issues. The claims in Imo's motion to supplement are explained only in cursory fashion (*see* CV DE 8), but they appear to relate to counsel's performance at trial and to appellate counsel "fail[ing]" to appeal the denial of a lengthy continuance in order to allow Imo's initial counsel to recover sufficiently to serve as "lead counsel" at trial. *See* CV DE 8. Accordingly Imo's new claims (to the extent they are supported by any facts in his cursory pleading) "are supported by facts that differ in both time and type" from those relevant to his sentencing-related ineffective assistance claims. *Gonzalez*, 592 F. 3d at 680. In light of that, Imo has not shown

and, indeed, has not even attempted to show that his new claims "relate back" to his initial § 2255 pleading. Those claims are, therefore, time-barred.

> **b. The record conclusively shows that Imo's ineffective assistance of counsel claims related to the loss amount and mass marketing increases in his guidelines calculation are meritless.**

>> **i. Applicable Law—Section 2255 and Ineffective Assistance of Counsel**

>>> **1. Section 2255**

Motions pursuant to 28 U.S.C. § 2255 may only seek relief for particular types of errors. *See United States* v. *Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998). A movant may raise a jurisdictional or constitutional claim, however, a motion under section 2255 "may not do service for an appeal." *United States* v. *Frady*, 456 U.S. 152, 165 (1982). If the claim asserted in a section 2255 motion could have been raised on direct appeal, but was not, the issue is considered to be procedurally defaulted; before a movant can obtain relief pursuant to section 2255, he must show cause for his failure to raise the issue on appeal and "actual prejudice" resulting from the error.[6] *Cervantes*, 132 F.3d at 1109. Conversely, where an issue is raised and decided on direct appeal, that issue may not be relitigated in a motion pursuant to § 2255. *United States* v. *Webster*, 392 F.3d 787, 791 (5th Cir. 2004); *United States* v. *Kalish*, 780 F.2d 506, 508 (5th Cir. 1986). A

---

[6] If a movant can establish that his counsel was constitutionally ineffective in failing to raise the claim previously, that showing will satisfy the "cause and prejudice" standard. *See United States* v. *Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992).

14

movant may also raise certain other claims under section 2255 that could not have been raised in a direct appeal, however to obtain relief on such a claim the movant must establish that allowing the alleged error to go uncorrected "would result in a complete miscarriage of justice." *Cervantes*, 132 F.3d at 1109.

Unlike many § 2255 litigants who appear before this Court, Imo's § 2255 filings were signed and filed by counsel. DE 751 at 12; 751-1 at 30; CV DE 8 at 4. Section 2255 litigants who appear pro se are entitled to have their pleadings construed liberally and to have them reviewed under a less stringent standard than those drafted by an attorney. *Haines* v. *Kerner*, 404 U.S. 519 (1972). Litigants represented by counsel, however, are not entitled to such liberal construction. *Beasley* v. *McCotter*, 798 F.2d 116, 118 (5th Cir. 1986) ("no liberal construction of the pleadings within the meaning of *Haines* v. *Kerner* . . . is warranted because [petitioner] is represented by counsel before this Court."); *see also United States* v. *Lee*, 648 F. App'x. 447, 448 (5th Cir. 2016) ("Because [movant] is represented by counsel, he is not entitled to the benefit of liberal construction." (unpublished)).

Even a pro se litigant must provide sufficient facts in support of his claims. *United States* v. *Pineda*, 988 F.2d 22, 23 (5th Cir. 1993). That is true because, even under the rule of liberal construction, "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *Id.* Accordingly, "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertion

15

on a critical issue in his pro se petition . . . to be of probative evidentiary value." *Ross* v. *Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

A 2255 motion may be resolved without an evidentiary hearing where the files, the motion and record of the case conclusively show that no relief is appropriate. *United States* v. *Santora*, 711 F.2d 41 (5th Cir. 1983). If the record is adequate to fairly dispose of the allegations, the court need inquire no further. *United States* v. *Smith*, 915 F.2d 959, 964 (5th Cir. 1990). "When the district court denies § 2255 relief without an evidentiary hearing, the nature of the court's ruling is akin to a ruling on a motion for summary judgment." *United States* v. *Poindexter*, 492 F.3d 263, 267 (4th Cir. 2007). Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp*. v. *Catrett*, 477 U.S. 317, 322 (1986) (same). Mere allegations of a factual dispute between the parties will not defeat an otherwise proper motion for summary judgment.

### ii. Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a defendant must satisfy the familiar two-prong analysis set forth in *Strickland* v. *Washington*, 466 U.S. 668 (1984). Under that standard, a movant must demonstrate that his

16

counsel's performance was both deficient and prejudicial. *Id*. This means that a movant must show that counsel's performance was objectively unreasonable, that is, outside the broad range of what is considered reasonable assistance. *United States* v. *Dovalina*, 262 F.3d 472, 474-75 (5th Cir. 2001). He must also show that the deficient performance led to an unfair and unreliable conviction or sentence. *Id.*

Counsel's performance is strongly presumed to fall within the wide range of reasonable professional assistance. *Premo* v. *Moore*, 562 U.S. 115, 121 (2011). To overcome that presumption, a petitioner must "show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Id.* at 121-22 (internal quotations omitted). "[T]he standard for judging counsel's representation is a most deferential one." *Id.* at 122. "The question is whether an attorney's representation *amounted to incompetence* under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id.* (emphasis added).

If the movant fails to prove one prong, it is not necessary to analyze the other. *United States* v. *Bejarano*, 751 F.3d 280, 285 (5th Cir. 2014) ("Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." (quoting *Strickland*)); *Armstead* v. *Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one.").

17

With respect to claims ineffective assistance of appellate counsel, the Fifth Circuit has explained that counsel is not required to raise "every non-frivolous issue on appeal." *United States* v. *Phillips*, 216 F.3d 345, 348 (5th Cir. 2000). Rather, in order to satisfy *Strickland*'s deficient performance prong, "the decision not to raise an issue [on appeal] must fall below an objective standard of reasonableness." *Id.* (internal quotation omitted). Under that standard, "[s]olid meritorious arguments based on directly controlling precedent should be discovered" and raised on appeal. *Id.* Thus, where a defendant claims that his counsel rendered ineffective assistance by failing to appeal a particular aspect of a court's Guidelines calculation, a reviewing court "consider[s] whether a challenge [to the particular Guideline calculation] would have been sufficiently meritorious that [defendant's] counsel should have raised it on appeal." *Id.*

### iii.   Imo cannot satisfy his burden under either prong of *Strickland* with respect to his claims that counsel should have appealed this Court's increases in his offense level based on the loss amount and use of mass marketing in the offense.

In light of the well-settled law set forth above, the record conclusively shows that Imo is not entitled to relief on the first two sentencing-related ineffective assistance of counsel claims in his initial § 2255 motion. His motion, as to those grounds, should be denied without further proceedings. *Santora*, 711 F.2d at 41.

Imo argues that his appellate counsel should have appealed this Court's finding that his offense involved an intended loss of $45,039,923, the full amount

of fraudulent claims billed to Medicare from January 2007 through June 2009. DE 751 at 4, 751-1 at 19-22. Significantly, the loss threshold that increased Imo's offense level by 20 levels was $20 million. PSR ¶ 63; U.S.S.G. § 2B1.1(b)(1)(L). Accordingly, unless Imo can show that this Court erred by more than $25 million in determining the loss attributable to him, he cannot prevail.

As an initial matter, the record reflects that Imo caused an *actual loss* of $30,216,592 to Medicare and Medicaid, namely the amount those entities paid, for fraudulent claims, into CNS bank accounts that Imo opened and controlled. PSR ¶ 27. Imo thus has not shown and cannot show that he was responsible for a loss amount of less than $20 million. Moreover, on appeal, Imo's codefendant's, Clardy and Anokam, each of whom played lesser roles in the conspiracy than Imo, argued that they could not be held responsible for losses exceeding $20 million based on the intended loss billed to Medicare and Medicaid during their participation in the conspiracy. *Imo*, 739 F.3d at 230.

The Fifth Circuit rejected the arguments of Imo's codefendants, holding that ample evidence supported the conclusion that Clardy and Anokam each intended to cause a loss exceeding $20 million. *Id.* at 240-41. That evidence included the fact that "Clardy signed the Medicare application for CNS with Imo," and that Anokam (like Imo) "had a managerial role in CNS and participated with the billing" and also "paid patients and recruiters." *Id.* at 241. The Fifth Circuit's description of

Imo's role in the offense even more strongly supports his responsibility for the full intended loss amount billed to Medicare. Imo submitted CNS's Medicare and Medicaid applications, signed the Medicare participating physician or supplier agreement, brought patients to CNS, paid CNS employees for recruiting patients, paid the patients, assigned another employee to make the payments when he could not, and falsified records to make it appear as if patients had received treatment when they had not. *Id.* at 230.

In light of the foregoing, Imo has not shown—and cannot show—that an appeal of this Court's loss calculation was so meritorious that the Constitution required his counsel to pursue it. Further, there is no reason to believe that if counsel had pursued such a claim on appeal that it would have fared better than the arguments raise by Clardy and Anokam. Accordingly, Imo has not satisfied either prong of Strickland with respect to his "loss amount" claim, which should be denied without further proceedings.

Imo's claim that appellate counsel was ineffective for failing to appeal the mass-marketing increase likewise fails. Imo argues that the payments to recruiters and patients cannot support the guideline increase because the patients were not induced to "purchase goods or services" and, alternatively, because the patients who received the payments were not the true "victims" of the healthcare fraud offense. *See* DE 751-1 at 23-26. Those arguments, however, are meritless. The

Fifth Circuit has affirmed the imposition of the mass marketing increase on facts virtually indistinguishable from those here and has explicitly rejected the patients-are-not-victims argument that Imo asserts his counsel should have raised. *United States* v. *Isiwele*, 635 F.3d 196, 205 (5th Cir. 2011).

In *Isiwele*, the Fifth Circuit affirmed the application of the mass marketing enhancement based on a coconspirator's "face-to-face recruitment of Medicare/Medicaid beneficiaries." *Id.* at 205. On appeal, Anokam challenged this Court's application of the mass marketing enhancement, but acknowledged that his argument was foreclosed by *Isiwele. Imo,* 739 F.3d 226, 241 n. 12. The Fifth Circuit agreed, holding that this Court did not err in applying the mass marketing increase to Anokam's sentence.

Imo fails to cite or acknowledge *Isiwele*, much less to offer a compelling argument showing that his counsel was constitutionally obligated to raise a foreclosed claim on direct appeal, or showing that such an argument could have prevailed in light of *Isiwele*. In describing Imo's role in the offense, the Fifth Circuit stated that Imo initially brought patient to CNS, personally paid the patients and the people who recruited them, and also assigned another employee to make such payments. *Id.* at 231. Imo may not now relitigate those facts, which were already decided on appeal. *Webster*, 392 F.3d at 791; *Kalish*, 780 F.2d at 508. Nor can he show, in light of those facts and the binding authority of *Isiwele*, that his

counsel was required to appeal the imposition of the mass marketing increase, or that such an appeal likely would have succeeded. Imo has, therefore, failed to meet his burden under either prong of *Strickland*.

### c. An evidentiary hearing is appropriate to resolve Imo's claim that counsel rendered constitutionally ineffective assistance of counsel by failing to appeal this Court's imposition of a 2-offense-level increase for obstruction of justice based on his failure to provide financial information to the Probation Department.

At sentencing, the Government sought a 2-level increase in Imo's offense level pursuant to U.S.S.G. § 3C1.1 which applies, in relevant part, where a defendant "willfully obstructed . . . the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." The Government sought that increase based on the fact that Imo, in connection with the preparation of the PSR, had "failed to provide probation and the Court with information about what happened to over $30 million that he received." DE 567 at 10. In response, Imo's counsel explained that he had advised Imo not to provide the financial information to the Probation Department because he was concerned that an erroneous statement might result in an increased offense level or potentially even a perjury prosecution. *Id.* at 11-14. This Court agreed with the Government and applied the 2-level increase, stating, "I don't think that Mr. Imo is playing straight with us about his finances, in just not telling us anything about them." *Id.* at 15.

Imo now argues that both his sentencing counsel and his appellate counsel rendered ineffective assistance in connection with the obstruction of justice increase. DE 751 at 6; 751-1 at 26-30. He asserts that sentencing counsel acted unreasonably by advising him not to provide the requested financial information to the Probation Department, causing this Court to apply the obstruction of justice increase, thus prejudicing him. As set forth below, however, Imo has not shown and cannot show that sentencing counsel acted unreasonably in advising him not to provide the requested financial information.

Comment note 2 to U.S.S.G. § 3C1.1 provides, in relevant part, that a defendant's "refusal to . . . provide information to a probation officer . . . *is not a basis for application of this provision*." U.S.S.G. § 3C1.1 cmt. n. 2 (emphasis added). Based on that application note, sentencing counsel did not act unreasonably in advising Imo not to provide a financial statement to the Probation Department. From the perspective of competent counsel, providing a financial statement to the Probation Department carried the potential risk of receiving an obstruction of justice enhancement (if it were found to contain a false material statement). The plain language of the application note, however, established that simply remaining silent could not result in the imposition of the obstruction of justice increase. Sentencing counsel could not have foreseen that the obstruction increase would be imposed in a manner directly contrary to the explicit terms of

23

the application note. Imo, thus, has not shown that sentencing counsel performed deficiently.

Imo also argues that appellate counsel provided ineffective assistance by failing to appeal the obstruction enhancement. Because the application note expressly states that refusing to provide information to a probation officer is not a valid basis for applying the obstruction enhancement, it appears that there was "a clearly meritorious appellate issue regarding whether the enhancement was proper" and, accordingly, the Government, does not argue that Imo has failed to satisfy *Strickland*'s deficient performance prong with respect to appellate counsel. *Phillips*, 210 F.3d at 350.

The record, however, is insufficient to determine whether Imo's sentence would be lower if counsel had appealed the obstruction enhancement. "In the appellate context, the prejudice prong requires a showing that [the Court of Appeals] would have afforded relief on appeal," thus resulting in a lower sentence. *Phillips*, 210 F.3d at 350-51. Here the record does not conclusively establish whether Imo would have received relief on appeal from the obstruction enhancement. At sentencing, in response to a question from the Government, this Court indicated that it would impose the same sentence "if the guidelines range calculation was later found to be incorrect." DE 567 at 23. It is not clear, however,

that that statement alone would have been sufficient, on appeal, to establish that imposing the obstruction enhancement was harmless error.

When assessing such arguments, the Fifth Circuit has stated that "a guidelines calculation error is harmless where the district court has considered the correct guidelines range and has stated that it would impose the same sentence even if that range applied." *United States* v. *Richardson*, 676 F.3d 491, 511 (5th Cir. 2012). "Even if a court did not consider the correct range, an error in the guidelines calculation can still be considered harmless if the proponent of the sentence convincingly demonstrates both (1) that the district court would have imposed the same sentence had it not made the error, and (2) that it would have done so for the same reasons it gave at the prior sentencing." *Id.* (internal quotation omitted). The Court has described this as a "heavy burden" that "requires the proponent to point to evidence in the record that will convince the appellate court that the district court had a particular sentence in mind and would have imposed it, notwithstanding the error." *Id.*

The Fifth Circuit has found the harmless error standard satisfied in cases where the sentencing court explicitly "stated that it had: (1) considered all of the possible guidelines ranges that could have resulted if it had erred in applying one or more of the enhancements to [defendant's] offense level; (2) found all of those

resulting ranges to be insufficient . . . ;and (3) stated that it would have imposed the same . . . sentence even if one of those ranges had applied." *Id.* at 512.

Assessing prejudice in Imo's case is complicated by the fact that after his initial sentencing and appeal, this Court reduced his sentence, pursuant to a Rule 35 motion. The record does not, on its face, reflect the extent to which this Court might have assessed that motion differently if Imo had not received the obstruction of justice increase to his original sentence.

The United States is not aware of any caselaw or other authority squarely addressing how to conduct the prejudice inquiry in a similar situation. It appears, however, that a hearing would be appropriate in order to allow Imo to present any further evidence regarding whatever prejudice he believes he is currently suffering as a result of appellate counsel's failure to pursue an appeal of the obstruction enhancement, and in order to set forth, on the record, the basis of this Court's sentence (and particularly any weight given to the obstruction enhancement in connection with the Rule 35 proceeding).

## III. **Conclusion**

The Government respectfully requests that this Court determine Imo's eligibility for appointed counsel, appoint counsel if appropriate, and schedule a limited evidentiary hearing regarding Imo's claim that appellate counsel was constitutionally ineffective in failing to appeal the imposition of the obstruction of

justice enhancement to his guidelines calculation. The Government further requests that this Court enter an order dismissing Imo's remaining claims as time-barred (with respect to the claims in the motion to supplement) or meritless (with respect to the remaining ineffective assistance of counsel claims in Imo's initial § 2255 motion).

Respectfully submitted,

ABE MARTINEZ
ACTING UNITED STATES ATTORNEY

CARMEN CASTILLO MITCHELL
Chief, Appellate Division

By:    s/ Jason Smith_____
JASON SMITH
Assistant United States Attorney
Attorney for Respondent
1000 Louisiana St., Suite 2300
Houston, TX  77002
SDTX No. 1690793
(713) 567-9723
Facsimile: (713) 718-3302

## <u>**CERTIFICATE OF SERVICE**</u>

I certify that a true and correct copy of the foregoing memorandum in response was electronically filed with the United States District Court for the Southern District of Texas, on July 24, 2017, and a copy was sent via certified mail, return receipt requested, to the last address of record for movant/defendant Umawa Oke Imo:

Umawa Oke Imo
Reg. No. 99155-179
FCI Big Spring
1900 Simler Ave
Big Spring, TX 79720


<u>s/ Jason Smith</u>
Jason Smith
Assistant United States Attorney
Attorney for Respondent